J-S56009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
ROBERT DURHAM :
:
Appellant : No. 1693 EDA 2019

Appeal from the Judgment of Sentence Entered October 16, 2013
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010212-2012

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.: Filed: March 11, 2021

Appellant, Robert Durham, appeals from the October 16, 2013 judgment of sentence of an aggregate term of 7 to 14 years' imprisonment, imposed after he was convicted of one count each of possession of a controlled substance,[1] possession of drug paraphernalia,[2] possession with intent to deliver a controlled substance ("PWID"),[3] and possession of a firearm by a prohibited person.[4] Appellant challenges the sufficiency of the evidence to sustain his convictions. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16).

[2] 35 P.S. § 780-113(a)(32).

[3] 35 P.S. § 780-113(a)(30).

[4] 18 Pa.C.S. § 6105(a)(1).

The trial court summarized the relevant facts of this matter in its

Pa.R.A.P. 1925(a) opinion:

On August 8, 2012[,] between the hours of 6:00 p.m. and 7:00 p.m., Officer Pellum Coaxum and Officer Michael McCain were conducting narcotics surveillance in the area of 5725 Malcom Street in Philadelphia. Officers Coaxum and McCain met with a confidential informant ("CI")[,] who was sent to the property on two occasions. Prior to sending the CI to the property the first time, they searched him for money and contraband before supplying him with $20.00 prerecorded money and directed him to 5725 Malcom Street. At approximately 6:30 p.m., Officer Coaxum observed the CI knock on the front security door and enter the property[,] and within minutes, [he] return[ed] to the officers with two tinted Ziploc packets containing an off-white chunky substance of alleged crack[]cocaine.

Upon returning and collecting evidence from the first transaction, the officers searched the CI[] again[] for money and contraband, and sent him back to the same property with $20.00 prerecorded money. At approximately 6:42 [p.m.], Officer Coaxum observed the CI knock on the door, enter the property, and then exit the property with an unidentified male. Officer Coaxum then observed the unidentified man hand the CI small objects for the prerecorded money. The CI returned to the officer with two blue[-]tinted Ziploc packets containing an off-white substance[,] which appeared to be crack cocaine. Officer McCain conducted a NIK Test G on the drugs that were purchased, which came back positive for the presence of cocaine[]base[] and the[n] placed the retrieved items in police department property receipt.

On August 9, 2012, Officers Coaxum and McCain returned to the area of 5725 Malcolm Street to conduct further narcotics surveillance. The officers met and searched the CI for contraband and money before supplying him with $20.00 prerecorded money. At approximately 4:10 p.m., Officer McCain[] observed the CI enter and exit 5725 Malcolm Street and return to the officers with one blur [sic] tinted Ziploc packet of an off-white substance, alleged crack cocaine, and two clear packets with green logos containing alleged marijuana. At approximately 4:15 p.m., Officer McCain, with members of the narcotics field unit[,] executed a search warrant.

> Officers approached the property and found [Appellant] in the doorway[,] where they arrested him. [Appellant] was searched and the officers recovered ten Ziploc packets, each containing an off-white chunky substance, alleged cocaine base, and $171.00[, $20.00 of which …] was the recorded buy money used by the CI that day. In executing the search warrant, the officers recovered the following items from the first floor: an SKS[] 7.62 caliber assault rifle with one clip loaded with nine rounds, an electric scale, $10.00, one plate with two razor blades which contained residue, and a cell phone. From the second floor[,] the officers recover[ed]: one clear Ziploc packet (contained inside [were] new and unused blue packets[,] … consistent with what was purchased with the cocaine base), new and unused sandwich bags, one clear baggie contain[ing] approximately 77.6 grams of bulk marijuana, sixteen blue[-]tinted Ziploc packets inside a clear baggie, one clear Ziploc packet with red logos, which contained signs of cocaine base.

Trial Court Opinion ("TCO"), 1/15/20, at 2-4 (unpaginated; citations to record omitted).

On August 9, 2012, Appellant was charged with possession of a controlled substance, possession of drug paraphernalia, PWID, and possession of a firearm by a prohibited person. At the conclusion of a waiver trial, held on August 28, 2013, Appellant was found guilty on all counts. On October 16, 2013, the trial court sentenced him to an aggregate term of 7 to 14 years' imprisonment and 3 years' probation. Appellant did not file a post-sentence motion.

On May 16, 2014, Appellant filed a *pro se* Post Conviction Relief Act ("PCRA")[5] petition. Appointed counsel filed an amended petition on February 23, 2015, which sought the reinstatement of Appellant's direct appeal rights.

---

[5] 42 Pa.C.S. §§ 9541-9546.

> Th[e trial] court held an evidentiary hearing[,] and on January 20, 2017, dismissed [Appellant's] PCRA petition finding that the issues raised in the amended petition were without merit. Pursuant to Pennsylvania Rule of Criminal Procedure 907, a letter was sent to [Appellant] via certified mail to advise [him] that his request for post-conviction relief would be denied/dismissed without further proceedings in 20 days.
>
> On February 18, 2017, this court received notice that [Appellant] appealed to the Superior Court of Pennsylvania from the order entered on January 20, 2017…. On March 19, 2019, the Superior Court issued an opinion which remanded the matter to this court to issue an order reinstating [Appellant's] direct appeal rights *nunc pro tunc*. On May 8, 2019, this court issued an order [accordingly]….

*Id.* at 1-2 (unnecessary capitalization omitted).

On June 7, 2019, Appellant filed a timely notice of appeal from the October 16, 2013 judgment of sentence,[6] followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

---

[6] This Court issued a rule to show cause on April 21, 2020, as to why this appeal should not be quashed as untimely, as Appellant's direct appeal rights were reinstated *nunc pro tunc* on May 8, 2019, but the docket indicates the notice of appeal was not filed until June 9, 2019, 32 days after the date of reinstatement. Subsequently, this Court discovered that counsel for Appellant was deceased; thus, an order was entered on May 12, 2020, withdrawing counsel's appearance and directing the trial court to appoint new counsel. Peter Alan Levin, Esquire, was appointed as counsel for Appellant, on June 12, 2020. On July 13, 2020, we issued a second rule to show cause why this appeal should not be quashed as untimely. On July 16, 2020, Attorney Levin filed a response, and this Court issued an order deferring the merits of the rule to show cause to the assigned panel. Based on our review of counsel's response to the rule, we discern that Appellant's notice of appeal was timely filed, in person, with the Office of Judicial Records, on Friday, June 7, 2019, and that the time-stamp reflecting a receipt date of Sunday, June 9, 2019, was a clerical error. Accordingly, we proceed with addressing the merits of this appeal. *See Commonwealth v. Williams*, 106 A.3d 583, 587 (Pa. 2014) ("A timely notice of appeal triggers the jurisdiction of the appellate court, notwithstanding whether the notice of appeal is otherwise defective.").

Appellant now presents this sole issue for our review: "Whether the guilty verdict was contrary to law as based on insufficient evidence[?]" Appellant's Brief at 7.

Our standard of review of sufficiency claims is well-settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted).

First, we address Appellant's sufficiency challenges regarding his convictions for intentional possession of a controlled substance and possession of drug paraphernalia. As to his possession of a controlled substance conviction, Appellant admits to having possession of cocaine at the time of his arrest, but avers that the Commonwealth failed to prove that he was ever in actual or constructive possession of the marijuana recovered from the second floor of the house, or that it did not belong to any other person who had access to the house. Appellant's Brief at 19. Similarly, with respect to the possession of drug paraphernalia charge, Appellant does not challenge the fact that drug paraphernalia was found in the house by the police at the time of his arrest. Rather, he argues that the Commonwealth failed to meet its burden to prove that he "possessed" the items. ***Id.*** at 18. Appellant states that "[t]he police

officers did not see [him] possess, utilize, or distribute any drug paraphernalia[,]" and that "[t]here was at least one other person with access to the house." *Id.* Appellant is not entitled to relief on either of these claims.

Preliminarily, we note that the offense of possession of a controlled substance is defined as:

> Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under [The Controlled Substance, Drug, Device and Cosmetic Act ("the Act")], or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by [the Act].

35 P.S. § 780-113(a)(16). The Act further defines possession of drug paraphernalia, in pertinent part, as "[t]he use of, or possession with intent to use, drug paraphernalia for the purpose of … packing, repacking, storing, [or] containing … a controlled substance in violation of this [A]ct." 35 P.S. § 780-113(a)(32). Drug paraphernalia includes, but is not limited to,

> [s]cales and balances used, intended for use or designed for use in weighing or measuring controlled substances[;] … [c]apsules, balloons, envelopes and other containers used, intended for use or designed for use in packing small quantities of controlled substances[; and c]ontainers and other objects used, intended for use, or designed for use in storing or concealing controlled substances.

35 P.S. §§ 780-102(b)(5), (9), (10).

It is well-established that:

> "In narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." *Commonwealth v. Thompson*, … 428 A.2d 223, 224 ([Pa. Super.] 1981). Actual possession is

proven "by showing … [that the] controlled substance [was] found on the [defendant's] person." ***Commonwealth v. Macolino***, … 469 A.2d 132, 134 ([Pa.] 1983). If the contraband is not discovered on the defendant's person, the Commonwealth may satisfy its evidentiary burden by proving that the defendant had constructive possession of the drug. ***Id.***

Our Supreme Court has defined constructive possession as "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." [***Id.***] … To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the defendant. Our Supreme Court "has recognized that constructive possession may be found in one or more actors where the item [at] issue is in an area of joint control and equal access." [***Commonwealth v.***] ***Johnson***, 26 A.3d [1078,] 1094 [(Pa. 2011)]. Nevertheless, "where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband." ***Commonwealth v. Davis***, … 480 A.2d 1035, 1045 ([Pa. Super.] 1984) (emphasis omitted).

***Commonwealth v. Vargas***, 108 A.3d 858, 868 (Pa. Super. 2014).

As the ***Vargas*** Court explained:

"For the Commonwealth to prove constructive possession where more than one person has access to the contraband, [it] must introduce evidence demonstrating either [the defendant's] participation in the drug related activity or evidence connecting [the defendant] to the specific room or areas where the drugs were kept." ***Commonwealth v. Ocasio***, … 619 A.2d 352, 354-55 ([Pa. Super.] 1993)). However, "[a]n intent to maintain a conscious dominion may be inferred from the totality of the circumstances … [and] circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." ***Macolino***, 469 A.2d at 134-135 (internal citations omitted). Moreover, we agree with the statement from the United States Court of Appeals for the Tenth Circuit that, although "mere presence" at a crime scene cannot alone sustain a conviction for possession of contraband:

[A] jury need not ignore presence, proximity and association when presented in conjunction with other evidence of guilt. Indeed, presence at the scene where drugs are being

> processed and packaged is a material and probative factor which the jury may consider. Drug dealers of any size and [illegal drug] manufacturers probably are reticent about allowing the unknowing to take view of or assist in the operation.
>
> ***United States v. Robinson***, 978 F.2d 1554, 1557-58 (10th Cir. 1992) (internal questions and citations omitted); ***see also Rivas v. United States***, 783 A.2d 125, 138 (D.C. 2001) (*en banc*) ("a claim of innocent presence becomes decidedly less plausible in an environment (vehicular or otherwise) that is rife with evidence of ongoing drug production or distribution, such as a manufacturing or cutting facility, a warehouse, or a staging or preparation area where a large quantity of drugs or drug paraphernalia is exposed to view"); … ***United States v. Staten***, 581 F.2d 878, 885 n.67 (D.C. Cir. 1978) ("[i]t would seem that the voluntary presence of the accused in an area obviously devoted to preparation of drugs for distribution is a circumstance potently indicative of his involvement in the operation").

***Vargas***, 108 A.3d at 868-69.

Likewise, to sustain a conviction for possession of drug paraphernalia, "the Commonwealth must establish that items possessed by [the] defendant were used or intended to be used with a controlled substance so as to constitute drug paraphernalia[,] and this burden may be met … through circumstantial evidence." ***Commonwealth v. Coleman***, 984 A.2d 998, 1001 (Pa. Super. 2009) (internal citation omitted). In determining whether an object is drug paraphernalia, the fact-finder should consider,

> in addition to all other logically relevant factors, statements by an owner or by anyone in control of the object concerning its use, … the proximity of the object, in time and space, to a direct violation of this [A]ct, the proximity of the object to controlled substances, the existence of any residue of controlled substances on the object, direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this [A]ct, … the existence and scope of

legitimate uses for the object in the community, and expert testimony concerning its use.

*Id.* (quoting 35 P.S. § 780-102(b)).

In regard to Appellant's conviction for possession of a controlled substance, he admits to being in possession of cocaine at the time of his arrest. His sufficiency claim pertaining to this offense is limited to his assertion that the Commonwealth failed to prove that he was in possession of the marijuana confiscated from the house. *See* Appellant's Brief at 19. Thus, Appellant has waived any claim regarding the sufficiency of evidence for his conviction as it relates to the possession of cocaine. *See* Pa.R.A.P. 1925(b)(4)(vii) (providing that the failure to include an issue in a Rule 1925(b) statement constitutes waiver of that issue on appeal); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

Moreover, we would find no error in the trial court's determination that the Commonwealth proved actual possession of a controlled substance, namely cocaine. TCO at 6-7. Ten blue-tinted Ziploc bags containing an off-white chunky substance, which later tested positive for cocaine, were found on Appellant's person at the time of his arrest. *Id.* at 7. "This evidence established the elements of possession of a controlled substance beyond a reasonable doubt." *Id.* *See also Macolino*, 469 A.2d at 134 (stating that possession of a controlled substance can be proven by showing that the controlled substance was found on the defendant's person). The Commonwealth astutely points out that it is not necessary for it to prove

possession of marijuana, as the evidence of cocaine found on Appellant's person is sufficient to sustain his possession of a controlled substance conviction. **See** Commonwealth's Brief at 9 n.1. Accordingly, we deem Appellant's sufficiency claim as it relates to the possession of marijuana moot.[7]

Additionally, the trial court found that the evidence presented by the Commonwealth supports Appellant's conviction of possession of drug paraphernalia. TCO at 8.

> Specifically, the record reveals the Commonwealth established [Appellant] had a key to the house[,] which locked the security door. Upon executing the warrant, police found [a] clear Ziploc packet containing inside new and unused blue packets (which was consistent with what [the CI] purchased with the cocaine base), an electronic scale, one plate with two razor blades with cocaine residue, and marijuana in [the] bedroom. Officer McCain testified that, based on his experience, the electronic scale, Ziploc packets, and razor blades found in the house indicated narcotics were being packaged at the location.

**Id.** (citations to record omitted). Viewing the evidence in the light most favorable to the Commonwealth, we discern no error by the trial court, and we uphold Appellant's conviction. **See Commonwealth v. Torres**, 617 A.2d

---

[7] Regardless, we agree with the Commonwealth that the evidence would also support a finding that Appellant had constructive possession of the marijuana. **See id.** (noting that the evidence established Appellant had on his person a key that unlocked the security door to the house, he was the only person in the house where the CI had purchased two packets of marijuana just minutes earlier, 77.6 grams of marijuana was recovered from the house, and the prerecorded money that the CI used to purchase cocaine and marijuana was found on Appellant's person) (citing **Commonwealth v. Miley**, 460 A.2d 778, 784 (Pa. Super. 1983) ("Where it appears that only the accused has access to the area where the drugs were found, intent to possess is established.") (internal citation omitted)).

812, 815-16 (Pa. Super. 1992) (determining that boxes of sandwich bags recovered together with 17 packets of cocaine was sufficient to establish that the appellant possessed drug paraphernalia). *See also* 35 P.S. §§ 780-102(b)(5), (9), (10) (defining scales used for weighing controlled substances, as well as envelopes or "other containers" used for the packing of small quantities of controlled substances or for the storing of controlled substances, as drug paraphernalia).

Next, we address Appellant's challenge to the sufficiency of the evidence to sustain his PWID conviction. PWID is defined as:

> [T]he manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possession with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). To sustain a conviction of PWID, "the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it." *Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (Pa. Super. 2005) (citation omitted).

> In determining whether there is sufficient evidence to support a PWID conviction, all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence. *Commonwealth v. Drummond*, 775 A.2d 849, 853-54 (Pa. Super. 2001) (citation omitted). Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant. *Commonwealth v.*

> *Kirkland*, 831 A.2d 607, 610 (Pa. Super. 2003) (citation omitted).

*Id.*

Here, Appellant claims that the Commonwealth failed to prove beyond a reasonable doubt that he had the intent to distribute a controlled substance. He concedes that testimony was presented regarding his possession of "ten blue tinted Ziploc packets, each containing inside off-white chunky substance, alleged cocaine base[,]" and that "$171 United States currency along with the $20 prerecorded buy money used that day" was confiscated from him on August 9, 2012. Appellant's Brief at 15 (citations to record omitted). Appellant argues, however, that "none of the officers … witnessed [him] hand the [CI] any controlled substance[,]" that he was "not observed to be present at the house on August 8, 2012[,]" and that he "was not seen opening the door for the CI on August 9." *Id.* at 15-16 (citations to record omitted). He further notes that, although he did have a key to the house, there was no proof of Appellant's residence recovered from the house, and the police officers had observed at least one other individual who had access to the house and who interacted with the CI. *Id.* at 16. Appellant's claims are wholly without merit.

Having already affirmed Appellant's convictions for possession of a controlled substance and possession of drug paraphernalia, we focus on the "intent to deliver" element of this offense. "In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substance." *Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa. Super.

- 12 -

2008). Where the quantity of the controlled substance is not dispositive as to the intent, the court may also look to other factors, such as "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and the sums of cash found in possession of the defendant." ***Commonwealth v. Brockman***, 167 A.3d 29, 39 (Pa. Super. 2017) (citing ***Commonwealth v. Tasamy***, 934 A.2d 1233, 1237-38 (Pa. 2007)).

In the instant matter, a total of 77.6 grams of marijuana and 2.721 grams of crack cocaine were recovered at the time of Appellant's arrest.[8] As summarized by the Commonwealth:

> On the first day of surveillance, the CI was directed by officers to make two separate controlled buys at the house and returned a total of four blue-tinted Ziploc bags containing crack cocaine. The following day, the CI went in the same property and returned with one blue-tinted Ziploc bag with cocaine base and two clear packets containing marijuana. [Appellant] was arrested just a few minutes later, and the police recovered from his person $[171], including $20 of prerecorded money along with ten packets containing crack cocaine that were "the same shape, size, color consistent with what was purchased" by the CI on both that day and the day before…. Additionally, drug paraphernalia typically used for packaging drugs for distribution were recovered, namely, a clear bag containing new and unused blue-tinted packets consistent with those returned by the CI, an electronic scale, and a plate with two razor blades that contained residue of cocaine base.

Commonwealth's Brief at 12-13 (citations to record omitted).

---

[8] ***See*** N.T. Trial, 8/28/13, at 28, 51.

We agree with the Commonwealth that all of the foregoing factors combined are sufficient evidence for the fact-finder to reasonably infer that Appellant exercised conscious dominion over the drugs with the intent to deliver. **See id.** at 13. **See also Brockman**, 167 A.3d at 39-40 (upholding a PWID conviction where the total weight of the contraband was 3.943 grams and was packaged in separate quantities contained in 35 clear plastic Ziploc packets); **Commonwealth v. Bess**, 789 A.2d 757, 761-62 (Pa. Super. 2002) (upholding the trial court's finding that the packaging of 2.2 grams of cocaine, along with the recovery of a "large sum" of cash in the amount of $158, and the absence of paraphernalia associated with the personal use of cocaine was sufficient to sustain a conviction of PWID); **Commonwealth v. Bruner**, 564 A.2d 1277, 1286 (Pa. Super. 1989) ("The presence of drug paraphernalia such as empty glassine baggies and scales has been held to establish the additional element of intent to deliver in connection with a charge of possession of a controlled substance.") (citation omitted). Thus, we discern no legal error in the trial court's finding that the Commonwealth "presented ample evidence to support the inference that [Appellant] constructively possessed the narcotics found in the house and had [the] intent to deliver." TCO at 9.

Finally, Appellant challenges the sufficiency of the evidence sustaining his possession of firearms conviction. The Pennsylvania Uniform Firearms Act defines this offense as follows:

**(a)   Offense defined.—**

- 14 -

(1)    A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).  While Appellant has not been convicted of an offense enumerated in section 6105(b), he does fall within the criteria of subsection (c), which provides, in relevant part, that "[a] person who has been convicted of an offense under … The Controlled Substance, Drug, Device and Cosmetic Act … that may be punishable by a term of imprisonment exceeding two years[,]" shall be subject to the prohibition outlined in subsection (a).  18 Pa.C.S. § 6105(c)(2).  Thus, Section 6105(a) clearly prohibits Appellant from possessing a firearm as a result of his drug-related convictions.

Where, as here, the defendant is not in physical possession of a firearm, the issue becomes whether the evidence is sufficient to establish that he had constructive possession of the item.  *See Commonwealth v. Heidler*, 741 A.2d 213, 215-16 (Pa. Super. 1999) ("Constructive possession is found where the individual does not have actual possession over the illegal item but has conscious dominion over it.") (internal quotation marks omitted). *See also Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018) ("Illegal possession of a firearm may be established by constructive possession.").  In order to prove conscious dominion, "the Commonwealth must present evidence to show that the defendant had both the power to control the firearm

and the intent to exercise such control." ***Heidler***, 741 A.2d at 216 (citing ***Commonwealth v. Gladden***, 665 A.2d 1201, 1206 (Pa. Super. 1995) (emphasis omitted)). Moreover, we have established that constructive possession of a firearm may be proven by circumstantial evidence and that the "requisite knowledge and intent may be inferred from examination of the totality of the circumstances." ***Commonwealth v. Smith***, 146 A.3d 257, 263 (Pa. Super. 2016) (quoting ***Commonwealth v. Clark***, 746 A.2d 1128, 1136 (Pa. Super. 2000)).

There is no dispute regarding the recovery of an illegal firearm in the instant matter. Rather, Appellant's sufficiency claim rests on his allegation that the Commonwealth failed to prove that he had constructive possession of the rifle. Appellant's Brief at 13. In support of his claim, he argues that "he was not the only person to have access to the house[,]" and that there was no evidence he "even had knowledge of the firearm, let alone the intent and ability to control it[.]" ***Id.*** at 14. Moreover, Appellant asserts that his "fingerprints were not on the firearm, showing that he likely had not controlled it at any point[,]" and that he did not attempt to run "or put up a struggle in any way" when he was arrested. ***Id.*** Appellant fails to convince us that he is entitled to relief on this claim.

In support of the trial court's finding that there was sufficient evidence to establish Appellant's constructive possession of the loaded, SKS, 7.62 caliber assault rifle confiscated from a shelf of the house where Appellant was present, it opined:

[Appellant] was the only individual present in the property when the warrant was executed.[9] Under the circumstances, he clearly had the ability to exercise control over the shotgun. In addition, [Appellant] had a key to the house on his person, several bags of cocaine identical to what was found in the house were found on [Appellant], and buy money from that day [was also found on Appellant]. This court found that all of this evidence and the inferences created by that evidence established that [Appellant] intended to exercise control over the firearm located on the shelf in order to aid his criminal enterprise.

TCO at 10-11.

Moreover, as the Commonwealth articulates, "the rifle's proximity to the kitchen cabinet that contained the plate and two razor blades with cocaine residue, as well as the fact that it was sitting right next to the electronic scale,"[10] is indicative that the weapon was connected to Appellant's drug-related, criminal activity and that strengthens the conclusion that he exercised control over the weapon. *See* Commonwealth's Brief at 14 (citing *Commonwealth v. Hanson*, 82 A.3d 1023, 1038) (Pa. 2013) (stating that "the closer a firearm is found to contraband, the stronger the inference of their association" to establish constructive control)). Based on our review of the facts, in the light most favorable to the Commonwealth as the verdict winner,

---

[9] Appellant's assertion that he was not the only person to have access to the house is of no moment. Two actors may have joint control and equal access to contraband, thereby constructively possessing it at the same time. *See Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996) (stating that the fact that another person may also have control and access does not eliminate the defendant's constructive possession).

[10] *See* N.T. Trial at 29 (Officer McClain's testifying that the scale and rifle were found together on a shelf in the kitchen near the entranceway to the basement, and that the plate containing cocaine residue that was recovered from the kitchen was within ten feet of the firearm).

we uphold Appellant's conviction for possession of a firearm by a prohibited person.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/11/21